MORA, APPELLANT, *v.* REGISTRAR OF MAYAGÜEZ, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refusing to Record Cancelation of Mortgage.

No. 582.—Decided February 18, 1924.

RECORD OF TITLE—JUNIOR MORTGAGE—CANCELATION—MENTION OF ENCUMBRANCE. —A property having been sold and mortgaged to secure the purchase price and the sale having been recorded mentioning the mortgage, that mortgage is senior to another mortgage created later by the grantee although the junior mortgage may have been recorded first in the registry; and if the senior mortgage is foreclosed with notice to the junior mortgagee and the proceeds are sufficient to satisfy only the senior mortgage, the court should order a cancelation of the junior mortgage to be recorded.

The facts are stated in the opinion.
*Mr. J. Sabater* for the appellant.
The respondent appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

José Mora owned a house in Mayagüez, and sold it to Luis

Perocier on July 3, 1920, for $6,500, of which the vendee paid $500 cash and agreed to pay the remaining $6,000 in six yearly instalments of $1,000 each. In the deed of sale a mortgage was created on the house to secure the deferred part of the purchase price. The deed was presented in the registry and the registrar recorded the property on August 5, 1922, in the name of the vendee, but as a separate record of the mortgage was not applied for, he merely made, according to law, the following note: "This property is mortgaged to secure the deferred part of the purchase price."

Perocier mortgaged the property to Successors of Esmoris & Company to secure a debt of $5,000. On August 5, 1922, this mortgage was recorded in the registry and the registrar noted the following on the record: "It is subject to the mention made of a mortgage in the preceding 12th record."

On August 18, 1922, the registrar recorded separately in Mora's favor the mortgage created in the deed of sale of July 3, 1920, which had been recorded as to the sale on August 5, 1922.

Perocier having failed to pay the deferred part of the purchase price, Mora foreclosed the mortgage under the summary proceeding of the Mortgage Law, giving notice to Successors of Esmoris & Company, and the property was finally sold at public auction on January 7, 1924. It was bought by Mora for the sum of $2,000, that being the highest bid.

Then, on Mora's petition the District Court of Mayagüez made an order containing, among other things, the following: "And it is further ordered that the junior mortgage in favor of Successors of Esmoris & Company be also wholly canceled in the Registry of Property of Mayagüez; * * * the clerk of this court to issue a writ in duplicate to that effect directed to the Registrar of Property of Mayagüez." The writ was issued and the registrar refused to cancel the

mortgage "because it had been recorded prior to the recording of Mora's foreclosed mortgage and the lawful proceedings were not followed." From that decision this administrative appeal was taken.

The pertinent part of article 125 of the Mortgage Law, as amended March 7, 1912, reads as follows:

"In the case of one or several estates being encumbered by mortgage debts of various creditors, and they are sold or awarded for the payment of the first creditor in such manner that the value of what is sold or awarded does not equal or exceed the mortgage debt which is liquidated, the remaining debts shall be, by act and right, considered canceled and upon presentation of the proper judicial order showing the sale or award and the reasons for same, there shall be canceled in the registry, including in the entry of cancellation the act constituting the liquidation of the preferred credit, all subsequent records of annuities (censos) or mortgages and records of attachment also made subsequently, thus leaving the estate or estates which have been conveyed or awarded free from all incumbrance."

"This shall be without prejudice to other rights and actions which the remaining creditors may exercise against the debtor in accordance with the laws."

The registrar maintains that the mortgage should not be canceled for the reason that although the mortgage of Esmoris was created junior to the mortgage of Mora, the fact is that it was recorded before Mora's mortgage was recorded separately and, therefore, it can not be considered as a junior mortgage that should be canceled in accordance with the provisions of said article 125 of the Mortgage Law.

The registrar's opinion is supported undoubtedly by section 1776 of the Civil Code and the opinion of commentator Morell.

The pertinent part of said section 1776 reads:

"Besides the requisites mentioned in section 1758, it is indispensable, in order that the mortgage may be validly constituted that the instrument in which it is created be entered in the registry of property."

734 MORA v. REGISTRAR OF MAYAGÜEZ. [Vol. 32, P. R. R.

And Morell expresses himself as follows:

"Moreover, to make valid a mortgage as a real right, section 1875 of the Civil Code requires that it be recorded in the registry. Hence, although the deed mentions the preference of a prior mortgage not recorded, that preference would not exist without the consent of the junior mortgagee who recorded his mortgage first, and it may be held even that, mention being made of the senior mortgage in the record of the junior mortgage would give the former no preference, because if it is not recorded, only a personal right is mentioned." 3 Morell's Mortgage Law, 645.

"Article 29 refers to ownership and real rights in general. Does it apply to a mortgage? In order that a mortgage may be validly constituted it must be *recorded* in the registry of property, according to articles 1875 of the Civil Code and 146 of the Mortgage Law. When the mortgage is mentioned only, is it validly constituted? Does it affect a third person? We think not. In our opinion a special record is required and article 29 should be amended to that effect." 2 Morell's Mortgage Law, 579.

We would agree absolutely with the registrar if the Mortgage Law did not contain the provision that in Morell's opinion ought to be amended. Article 29 reads as follows:

"Art. 29.—Ownership or any other property right expressly mentioned in records or cautionary notices, although not appearing in the registry as a separate and special record, shall be effective against third persons from the date of the entry made upon presentation of the instrument.

"The provisions of the foregoing paragraph shall be understood without prejudice to the obligation of specially recording such interests or to the liability which may be incurred by a person who must request the record in certain cases." Mortgage Law, Compilation of 1911, p. 1071.

The words "any other property right expressly mentioned" used in the statute include a mortgage. It is one thing that the mortgage is not validly constituted, as in fact it is not by its mere mention in the registry, and quite another thing that its mention does not affect a third person. The second paragraph of the statute can not be construed

as annulling the first. Both may and do have separate effect of themselves and supplement each other. For example, it would have been impossible to foreclose the mortgage without first recording it separately, but as it was mentioned so clearly and precisely by the registrar, the junior mortgagee could not plead ignorance.

Commenting on article 29 of the Mortgage Law, Galindo says:

"It is known that publicity is one of the foundations of the law developed in articles 23, 24 and 25 which provide that only recorded titles shall be effective against third persons who have not recorded their rights. Although it appears logical that each real right be shown in a separate record, the legislators did not forget the frequency with which in some deeds other rights are mentioned or reserved which should be set out in the record relative to the act or contract that we might call principal, and, bearing that basis in mind, they enacted article 29. By virtue of its provisions, if, for example, in a deed of sale on deferred payments the debt is secured by a mortgage on the same property, mention should be made of it in the record of the sale, and although the grantor does not request that his mortgage right be recorded separately and specially, it is sufficient that it be mentioned in order to give it effect against third persons. The reason is obvious. The person who desires to contract for that property may go to the registry and as the encumbrance will appear there, he can not allege ignorance although it is not specially recorded." 2 Galindo *Leg. Hip.* 317.

Commenting on article 17, he says:

"Also, bearing in mind the materiality of the wording of article 17, the record of a mortgage or annuity created and not recorded before recording in the registry the deed conveying the ownership of the property affected by it, may be considered an exception, if in the record mention is made of the lien.

"If article 17 should be followed literally, such a mortgage or annuity could not be recorded, although it had been mentioned in the record of the deed conveying the ownership of the property; but taking into account that the grantor, acting in due good faith, acknowledged in the deed the existence of the mortgage or annuity, and that the registrar, complying with the provision of article 29

of the Mortgage Law, made mention of such a lien by including it in the paragraph corresponding to the record,· we believe that if after this the mortgagee or annuitant should apply for a record of his title it would have to be made, although it was of a date prior to that of the recorded deed. The purpose of article 17 is to prevent prejudice to the right of him who recorded his title opportunely and as in the supposed case there is no question of prejudice because, according to article 29 of the Mortgage Law, the ownership or any other property right expressly mentioned in a record shall be effective against third persons and, with greater reason, against one who was a party to the act or contract recorded, and he is not thereby relieved of the obligation of especially recording the said right, the lienor should not be estopped from recording at his pleasure. (Decision of July 27, 1889.)'' 1 Galindo *Leg. Hip.*, 652.

The above extracts from Galindo were cited with approval in the case of *Bello et al.* v. *Registrar of Arecibo*, 31 P. R. R. 112, in which the court decided a question similar to the question involved in this case.

After the mortgage was recorded separately, there being no doubt about its date because it was a public document, and the mortgage having been mentioned beforehand in the registry, the conclusion reached· by the district court that the mortgage of Esmoris was posterior and could and should be canceled was justified by the facts and the law.

Therefore, the appeal must be sustained, the decision appealed from reversed and the registrar ordered to comply with the order of the district court.

It seems well to repeat here what was said in the *Bello Case, supra*: This decision is limited to the purposes of the registry. If Esmoris feels aggrieved, he may resort to the corresponding action and if he establishes his right it will be recognized.

*Reversed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.